Evan J. Smith
BRODSKY & SMITH
240 Mineola Boulevard
First Floor
Mineola, NY 11501
Telephone:     516.741.4977
Facsimile:      516.741.0626
esmith@brodskysmith.com

*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| GEORGII IVANOV, | Case No.: |
| Plaintiff, | **Complaint For:** |
| vs. | (1)  Violation of § 14 (a) of the Securities Exchange Act of 1934 |
| CONVEY HEALTH SOLUTIONS HOLDINGS, INC., SHARAD S. MANSUKANI, STEPHEN FARRELL, TODD B. SISITSKY, KATHERINE WOOD, W. CARL WHITMER, and PAUL V. CAMPANELLI, | (2)  Violation of § 20(a) of the Securities Exchange Act of 1934 |
| | **JURY TRIAL DEMANDED** |
| Defendants. | |

Plaintiff, Georgii Ivanov ("Plaintiff"), by and through his attorneys, alleges upon

information and belief, except for those allegations that pertain to him, which are alleged upon

personal knowledge, as follows:

## SUMMARY OF THE ACTION

1.       Plaintiff brings this stockholder action against Convey Health Solutions Holdings,

Inc. ("Convey Health" or the "Company") and the Company's Board of Directors (the "Board" or

the "Individual Defendants," and collectively with the Company, the "Defendants"), for violations

of Sections 14(a) and 20(a) of the Securities and Exchange Act of 1934 (the "Exchange Act") as a

result of Defendants' efforts to sell the Company to affiliates of TPG Global, LLC, through merger vehicle Commodore Merger Sub 2022, Inc. ("Merger Sub" and collectively with Parent, "TPG") as a result of an unfair process, and to enjoin the closing of the proposed all cash transaction (the "Proposed Transaction").

2.      The terms of the Proposed Transaction were memorialized in a June 21, 2022, filing with the Securities and Exchange Commission ("SEC") on Form 8-K attaching the definitive Agreement and Plan of Merger (the "Merger Agreement"). Under the terms of the Merger Agreement, each existing share of Convey Health's common stock will be converted into the right to receive $10.50 in cash, without interest.

3.      Thereafter, on July 25, 2022, Convey filed an Information Statement on Form PREM14C attaching the Information statement (the "Information Statement") with the SEC in support of the Proposed Transaction.

4.      The Proposed Transaction is unfair for a number of reasons.  Significantly, it appears as though the Board has entered into the Proposed Transaction to procure for itself and senior management of the Company significant and immediate benefits with no thought to Plaintiff, as well as the Company's public stockholders.  For instance, pursuant to the terms of the Merger Agreement, upon the consummation of the Proposed Transaction, Company Board Members and executive officers will be able to exchange all Company equity awards and Stock for shares in the Surviving entity.

5.      Company insiders, through their non-public negotiations, have orchestrated a deal in which Company management will have the opportunity to exchange their shares for shares of the new company. While Plaintiff and other common stockholders will be frozen out of future

gains as a result of continued success, management will continue to reap the benefits by maintaining shares in the Pro Forma entity.

6.      In violation of the Exchange Act, Defendants caused to be filed the materially deficient Information Statement, depriving Plaintiff of the information necessary to make an informed decision on whether to seek appraisal of his shares.  The Information Statement is materially deficient, deprives Plaintiff of the information necessary to make an intelligent, informed and rational decision of whether to seek appraisal of his shares, and is thus in violation of the Exchange Act.  As detailed below, the Information Statement omits and/or misrepresents material information concerning, among other things: (a) the sales process and in particular certain conflicts of interest for management; (b) the financial projections for Convey, provided by Convey management to the Board and the Board's financial advisor Centerview Partners, LLC ("Centerview") and (c) the data and inputs underlying the financial valuation analyses, if any, that purport to support the fairness opinions created by Centerview, if any, and provide to the Company and the Board.

7.      Absent judicial intervention, the Proposed Transaction will be consummated, resulting in irreparable injury to Plaintiff.  This action seeks to enjoin the Proposed Transaction.

## PARTIES

8.      Plaintiff is a citizen of New York and, at all times relevant hereto, has been a Convey Health stockholder.

9.      Defendant Convey Health provides technology enabled solutions and advisory services to assist its clients with workflows across product developments, sales, member experience, clinical management, core operations, and business intelligence and analytics. Convey Health is incorporated in Delaware and has its principal place of business at 100 SE 3rd Avenue,

26th Floor, Fort Lauderdale, Florida 33394.  Shares of Convey Health common stock are traded on the New York Stock Exchange under the symbol "CNVY".

10.     Defendant Sharad S. Mansukani ("Mansukani") has been a Director of the Company at all relevant times.

11.     Defendant Stephen Farrell ("Farrell") has been a director of the Company at all relevant times. In addition, Farrell serves as the Company's Chief Executive Officer ("CEO") and President.

12.     Defendant Todd B. Sisitsky ("Sisitsky") has been a director of the Company at all relevant times.

13.     Defendant Katherine Wood ("Wood") has been a director of the Company at all relevant times.

14.     Defendant W. Carl Whitmer ("Whitmer") has been a director of the Company at all relevant times.

15.     Defendant Paul V. Campanelli ("Campanelli") has been a director of the Company at all relevant times.

16.     Defendants identified in ¶¶ 10 - 14 are collectively referred to as the "Individual Defendants."

17.     Non-Party TPG is a privately held investment management fund.

18.     Non-Party Merger Sub is a wholly owned subsidiary of TPG created to effectuate the Proposed Transaction.

## JURISDICTION AND VENUE

19.     This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges

violations of Sections 14(a) and 20(a) of the Exchange Act.  This action is not a collusive one to confer jurisdiction on a court of the United States, which it would not otherwise have.  The Court has supplemental jurisdiction over any claims arising under state law pursuant to 28 U.S.C. § 1367.

20.    Personal jurisdiction exists over each defendant either because the defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over defendant by this Court permissible under traditional notions of fair play and substantial justice.

21.    Venue is proper in this District pursuant to 28 U.S.C. § 1391, because each of the Individual Defendants, as Company officers or directors, has extensive contacts within this District; for example, the Company's stock trades on the New York Stock Exchange which is headquartered in this District.

## SUBSTANTIVE ALLEGATIONS

### *Company Background*

22.    Convey Health Solutions Holdings, Inc. provides technology enabled solutions and advisory services to assist its clients with workflows across product developments, sales, member experience, clinical management, core operations, and business intelligence and analytics. It operates through two segments, Technology Enabled Solutions and Advisory Services. The Technology Enabled Solutions segment offers technology solutions through web-based customizable application that is used to identify, track, and administer contractual services, or benefits provided under a client's plan to its Medicare and Medicaid beneficiaries. It also provides analytics over healthcare data to capture and assess gaps in risk documentation, quality, clinical care, and compliance. The company also offers health plan management, data analytics,

supplemental benefit, advisory, and software services. The Advisory Services segment offers sales and marketing strategies, provider network strategies, compliance, star ratings, quality, clinical, pharmacy, analytics, and risk adjustment. It serves government sponsored, medicare advantage, medicare, as well as pharmacy benefits managers. The company was founded in 2001 and is headquartered in Fort Lauderdale, Florida.

23.     The Company's most recent financial performance press release, revealing financial results from the quarter preceding the announcement of the Proposed Transaction, indicated impressive financial success.  For example, in the May 10, 2022 press release announcing its 2022 Q1 financial results, the Company highlighted net revenues of $96.7 million, up 17% compared to Q1 2021 of $82.6 million.

24.     Speaking on the positive results, CEO Defendant Farrell said, "We achieved solid first quarter financial and operating results across both of our reporting segments. Our technology team implemented and welcomed new clients and members during the first quarter and our advisory business continued to experience high demand in the first quarter as health plans sought competitive advantages."

25.     The sustained financial success and impressive results are not an anomaly, but rather, are indicative of a trend of continued future potential success by Convey Health.  Clearly, based upon the positive outlook, the Company is likely to have tremendous future success.

26.     Despite this upward trajectory, the Individual Defendants have caused Convey Health to enter into the Proposed Transaction without providing requisite information to Convey Health stockholders such as Plaintiff.

*The Flawed Sales Process*

27.     As detailed in the Information Statement, the process deployed by the Individual Defendants was flawed and inadequate, was conducted out of the self-interest of the Individual Defendants and was designed with only one concern in mind – to effectuate a sale of the Company by any means possible.

28.     Additionally, the Proposed Transaction is a foregone conclusion, with Parent owning a 74.7% of the outstanding common shares and Company insiders collectively owning another 6.4%, Common shareholders such as plaintiff are left with no recourse to stop the Proposed Transaction. Unfortunately, the Information Statement fails to account for this issue because it provides no provision for minority shareholder rights, specifically a majority of minority voting provision.

29.     Further compounding the issue, the Information Statement describes a sales process in which the board rushed through the sales process, failing to conduct a market check for potentially interested third parties due to TPG's unwillingness to entertain a sale of their shares or strategic alternative.

30.     Additionally, the Information Statement is silent as to the nature of the confidentiality agreement entered into between the Company and Parent, whether this agreement differed from any other agreement with potentially interested third parties not specifically mentioned by the Information Statement, if so in all specific manners, including all specific terms of any such included "don't-ask, don't-waive" provisions or standstill provisions contained therein, including, all specific conditions, if any, under which such provisions would fall away.

31.     It is not surprising, given this background to the overall sales process, that it was conducted in an inappropriate and misleading manner.

*The Proposed Transaction*

32.     On June 21, 2022, Convey Health and TPG issued a joint press release announcing

the Proposed Transaction.  The press release stated, in relevant part:

> **FORT LAUDERDALE, FL (June 21, 2022)** – **Convey Health Solutions Holdings, Inc. (NYSE: CNVY)** ("Convey"), a leading healthcare technology and services company, announced today that it has entered into a definitive merger agreement pursuant to which TPG Capital, the private equity platform of global alternative asset management firm TPG ("TPG") and Convey's principal shareholder, will acquire all of the outstanding shares of Convey common stock not currently owned by TPG or certain management and director shareholders for $10.50 per share in cash, representing an enterprise value of approximately $1.1 billion.
>
> The purchase price represents a premium of approximately 99% over Convey's 30-day volume weighted average price per share as of June 17, 2022, and a premium of approximately 143% to the closing price of Convey common stock on June 17, 2022, the last trading day prior to public disclosure of the transaction.
>
> A special committee (the "Special Committee") of the Board of Directors of Convey (the "Board"), comprised solely of independent directors and advised by its own independent legal and financial advisors, unanimously recommended that the Board approve the transaction and determined it was in the best interests of Convey and its shareholders that are not affiliated with TPG or such management and director shareholders. Acting upon the recommendation of the Special Committee, the Board approved the transaction.
>
> "We believe this transaction provides substantial value, liquidity and certainty for our shareholders. Going forward, as a private company and with TPG's support, we will have the ability to continue to make investments in the company and better serve our customers," said Stephen Farrell, CEO of Convey.
>
> "Convey is a leading, integrated payor technology platform that enables efficiency and improves clinical and financial outcomes across the healthcare system. We look forward to continuing our partnership in its next chapter as a private company," said Katherine Wood, Partner at TPG.
>
> The transaction is expected to close in the second half of 2022. Completion of the transaction is subject to customary closing conditions. The transaction has been approved by TPG in its capacity as the principal shareholder of Convey and no other shareholder approval is required. Upon completion of the transaction, Convey will become a private company and will no longer be publicly listed or traded on NYSE.

Davis Polk & Wardwell LLP is acting as legal counsel to TPG. Centerview Partners is acting as financial advisor to the Special Committee and Simpson Thacher & Bartlett LLP is acting as its legal counsel. Cravath, Swaine & Moore LLP is acting as legal counsel to Convey.

### *Potential Conflicts of Interest*

33. The breakdown of the benefits of the deal indicate that Convey insiders are the primary beneficiaries of the Proposed Transaction, not the Company's public stockholders such as Plaintiff. The Board and the Company's executive officers are conflicted because they will have secured unique benefits for themselves from the Proposed Transaction not available to Plaintiff as a public stockholder of Convey.

34. Company insiders have bargained to avoid a freeze-out of future success in the Company by arranging a deal in which their shares will be exchanged for shares of the post-closure corporation. Under the terms of the Proposed Transaction, Company management will be entitled to engage in subsequent negotiations to exchange their existing shares in the Company for shares of the post-closure company. Rather than being forced to accept the lackluster consideration that they negotiated, Company insiders will have the option of continuing the momentum that the Company is currently enjoying, and reap the subsequent rewards of the Company's success. Much to Plaintiff's dismay, common stockholders are not entitled to this option, or any option for that matter.

35. Additionally, Company insiders, currently own large amounts of company options, restricted stock units, and other equity awards, all of which will be exchanged for shares of stock in the surviving company, a benefit to which Plaintiff and common stockholders are not entitled.

36. The Information Statement also fails to adequately disclose communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders. Communications regarding post-transaction employment during the

negotiation of the underlying transaction must be disclosed to stockholders. This information is necessary for Plaintiff to understand potential conflicts of interest of management and the Board, as that information provides illumination concerning motivations that would prevent fiduciaries from acting solely in the best interests of the Company's stockholders.

37.     Thus, while the Proposed Transaction is not in the best interests of Convey, Plaintiff or Company stockholders, it will produce significant benefits for the Company's officers and directors.

***The Materially Misleading and/or Incomplete Information Statement***

38.     On July 25, 2022, the Convey Board caused to be filed with the SEC a materially misleading and incomplete Information Statement that, in violation the Exchange Act, failed to provide Plaintiff in his capacity as a Company stockholder with material information and/or provides materially misleading information critical to the total mix of information available to Plaintiff concerning the financial and procedural fairness of the Proposed Transaction.

*Omissions and/or Material Misrepresentations Concerning the Sales Process leading up to the Proposed Transaction*

39.     Specifically, the Information Statement fails to disclose material information concerning the process conducted by the Company and the events leading up to the Proposed Transaction.  In particular, the Information Statement fails to disclose:

    a.  Adequate reasoning as to why no majority-of-the-minority vote was required, despite Parent and Company insiders collectively owning 80.1% of the outstanding shares;

b.  Whether the confidentiality agreements entered into by the Company with Parent differed from any other unnamed confidentiality agreement entered into between the Company and an interested third parties;

c.  All specific conditions under which any standstill provision contained in any entered confidentiality agreement entered into between the Company and potentially interested third parties throughout the sales process, including The Consortium, would fall away; and

d.  Adequate and complete disclosure of communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders.

*Omissions and/or Material Misrepresentations Concerning Convey's Financial Projections*

40.  The Information Statement fails to provide material information concerning financial projections for Convey provided by Convey management to the Board and Centerview and relied upon by Centerview in its analyses.  The Information Statement discloses management-prepared financial projections for the Company which are materially misleading.

41.  Notably the Information Statement reveals that as part of its analyses, Centerview reviewed, "certain internal information relating to the business, operations, earnings, cash flow, assets, liabilities and prospects of the Company" prepared by Company management.

42.  Therefore, the Information Statement should have, but fails to provide, certain information in the projections that Convey management provided to the Board, Centerview, and Centerview.  Courts have uniformly stated that "projections … are probably among the most highly-prized disclosures by investors.  Investors can come up with their own estimates of discount

rates or [] market multiples.  What they cannot hope to do is replicate management's inside view of the company's prospects." *In re Netsmart Techs., Inc. S'holders Litig.*, 924 A.2d 171, 201-203 (Del. Ch. 2007)

43.     With regard to the *Certain Company Financial Forecasts* prepared by Convey, the Information Statement fails to disclose material line items for important metrics.

   a.   Adjusted EBITDA, including all underlying inputs, metrics, and assumptions, including specifically: interest, tax, depreciation and amortization, costs of COVID-19, debt issuance costs, loss on extinguishment of debt, and costs of director and officer prior act liability insurance policies;

   b.   Unlevered Free Cash Flow, including all underlying inputs, metrics, and assumptions, including specifically: tax-deductible depreciation and amortization, cash taxes, other non-cash expenses (including non-cash lease expense and other operating cash adjustments), increases in net working capital, decreases in net working capital, capital expenditures, and capital development costs; and

   c.   The inputs, metrics, and assumptions used to calculate a cash tax rate of 27.9%.

44.     The Information Statement also fails to disclose a reconciliation of all non-GAAP to GAAP metrics utilized in the projections.

45.     This information is necessary to provide Plaintiff, in his capacity as a Company stockholder, a complete and accurate picture of the sales process and its fairness.  Without this information, Plaintiff is not fully informed as to Defendants' actions, including those that may have been taken in bad faith, and cannot fairly assess the process.

46.     Without accurate projection data presented in the Information Statement, Plaintiff is unable to properly evaluate the Company's true worth, the accuracy of the Centerview's financial analyses, or make an informed decision whether to seek appraisal of his shares.  As such, the Board has violated the Exchange Act by failing to include such information in the Information Statement.

*Omissions and/or Material Misrepresentations Concerning the Financial Analyses by Centerview*

47.     In the Information Statement, Centerview describes its fairness opinion and the various valuation analyses performed to render such opinion.  However, the descriptions fail to include necessary underlying data, support for conclusions, or the existence of, or basis for, underlying assumptions.  Without this information, one cannot replicate the analyses, confirm the valuations or evaluate the fairness opinions.

48.     With respect to the *Selected Companies Analysis*, the Information Statement fails to disclose the following:

   a.   The specific, inputs, metrics, and assumptions used to determine reference range of EV / 2023E EBITDA multiples of 8.0x to 11.0x;

   b.   The illustrative range of implied enterprise values calculated for the Company;

   c.   The Company's net debt; and

   d.   The number of fully-diluted outstanding shares of the Company Common Stock as of June 17, 2022.

49.     With respect to the *Premiums Paid Analysis*, the Information Statement fails to disclose the following:

  a. The specific date on which each transaction closed;

  b. The value of each transaction compared; and

  c. The specific inputs, metrics, and assumptions for each transaction compared.

50. With respect to the *Discounted Cash Flow Analysis*, the Information Statement fails to disclose the following:

  a. The range of implied enterprise values for the Company;

  b. The specific inputs and assumption used to determine discount rates ranging from 10.00% to 12.00%;

  c. The Company's weighted average cost of capital;

  d. The range of implied terminal values used; and

  e. The specific inputs, metrics, and assumptions used to determine a range of exit multiples to the Company's terminal year EBITDA ranging from 8.0x to 12.0x.

51. With respect to the *Illustrative Discounted Future Share Price Analysis*, the Information Statement fails to disclose the following:

  a. The inputs, metrics, and assumptions used to determine one-year forward Adjusted EBITDA multiples of 7.0x-10.0x; and

  b. The inputs, metrics, and assumptions used to determine a discount rate of 12.2%.

52. With respect to the *Analyst Price Targets*, the Information Statement fails to disclose the following:

  a. The specific Wall Street research analyst reports consulted in this analysis; and

  b. The authors of each estimate and the firms who produced them.

53.     These disclosures are critical for Plaintiff to be able to make an informed decision on whether to seek appraisal of his shares.

54.     Without the omitted information identified above, Plaintiff is missing critical information necessary to evaluate whether the proposed consideration truly maximizes his value and serves his interest as a stockholder.  Moreover, without the key financial information and related disclosures, Plaintiff cannot gauge the reliability of the fairness opinion and the Board's determination that the Proposed Transaction is in his best interests as a public Convey stockholder. As such, the Board has violated the Exchange Act by failing to include such information in the Information Statement.

## FIRST COUNT

### Violations of Section 14(a) of the Exchange Act

### (Against All Defendants)

55.     Plaintiff repeats all previous allegations as if set forth in full herein.

56.     Defendants have disseminated the Registration Statement with the intention of depriving stockholders, including Plaintiff, of the information necessary to make an informed decision of whether to seek appraisal of their shares.

57.     Section 14(a) of the Exchange Act requires full and fair disclosure in connection with the Proposed Transaction.  Specifically, Section 14(a) provides that:

> It shall be unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the [SEC] may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent

or authorization in respect of any security (other than an exempted security) registered pursuant to section 78*l* of this title.

58.     As such, SEC Rule 14a-9, 17 C.F.R. 240.14a-9, states the following:

No solicitation subject to this regulation shall be made by means of any proxy statement, form of proxy, notice of meeting or other communication, written or oral, containing any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading or necessary to correct any statement in any earlier communication with respect to the solicitation of a proxy for the same meeting or subject matter which has become false or misleading.

59.     The Registration Statement was prepared in violation of Section 14(a) because it is materially misleading in numerous respects and omits material facts, including those set forth above.  Moreover, in the exercise of reasonable care, Defendants knew or should have known that the Registration Statement is materially misleading and omits material facts that are necessary to render them non-misleading.

60.     The Individual Defendants had actual knowledge or should have known of the misrepresentations and omissions of material facts set forth herein.

61.     The Individual Defendants were at least negligent in filing a Registration Statement that was materially misleading and/or omitted material facts necessary to make the Registration Statement not misleading.

62.     The misrepresentations and omissions in the Registration Statement are material to Plaintiff, and Plaintiff will be deprived of his entitlement to decide whether to seek appraisal of

his shares on the basis of complete information if such misrepresentations and omissions are not corrected prior to the consummation of the Proposed Transaction.

## SECOND COUNT

## Violations of Section 20(a) of the Exchange Act

## (Against all Individual Defendants)

63.     Plaintiff repeats all previous allegations as if set forth in full herein.

64.     The Individual Defendants were privy to non-public information concerning the Company and its business and operations via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at management and Board meetings and committees thereof and via reports and other information provided to them in connection therewith.  Because of their possession of such information, the Individual Defendants knew or should have known that the Registration Statement was materially misleading to Plaintiff in his capacity as a Company stockholder.

65.     The Individual Defendants were involved in drafting, producing, reviewing and/or disseminating the materially false and misleading statements complained of herein.  The Individual Defendants were aware or should have been aware that materially false and misleading statements were being issued by the Company in the Registration Statement and nevertheless approved, ratified and/or failed to correct those statements, in violation of federal securities laws.  The Individual Defendants were able to, and did, control the contents of the Registration Statement. The Individual Defendants were provided with copies of, reviewed and approved, and/or signed the Registration Statement before its issuance and had the ability or opportunity to prevent its issuance or to cause it to be corrected.

66.     The Individual Defendants also were able to, and did, directly or indirectly, control the conduct of Convey Health's business, the information contained in its filings with the SEC, and its public statements.  Because of their positions and access to material non-public information available to them but not the public, the Individual Defendants knew or should have known that the misrepresentations specified herein had not been properly disclosed to and were being concealed from Plaintiff and Company, and that the Registration Statement was misleading.  As a result, the Individual Defendants are responsible for the accuracy of the Registration Statement and are therefore responsible and liable for the misrepresentations contained herein.

67.     The Individual Defendants acted as controlling persons of Convey Health within the meaning of Section 20(a) of the Exchange Act.  By reason of their position with the Company, the Individual Defendants had the power and authority to cause Convey Health to engage in the wrongful conduct complained of herein.  The Individual Defendants controlled Convey Health and all of its employees.  As alleged above, Convey Health is a primary violator of Section 14 of the Exchange Act and SEC Rule 14a-9.  By reason of their conduct, the Individual Defendants are liable pursuant to section 20(a) of the Exchange Act.

WHEREFORE, Plaintiff demands injunctive relief, in his favor and against the Defendants, as follows:

A.     Enjoining the Proposed Transaction;

B.     In the event Defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

C.     Directing the Individual Defendants to exercise their fiduciary duties to disseminate a Registration Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained

therein not misleading;

D.      Awarding Plaintiff the costs of this action, including reasonable allowance for

Plaintiff's attorneys' and experts' fees; and

E.      Granting such other and further relief as this Court may deem just and proper.

## **<u>DEMAND FOR JURY TRIAL</u>**

Plaintiff hereby demands a jury on all issues which can be heard by a jury.

Dated: August 12, 2022                   **BRODSKY & SMITH**

                                   By:   */s/ Evan J. Smith*
                                         Evan J. Smith
                                         240 Mineola Boulevard
                                         Mineola, NY  11501
                                         Phone:  (516) 741-4977
                                         Facsimile (561) 741-0626

                                         *Counsel for Plaintiff*